EMILIO M. GARZA, Circuit Judge,
dissenting:
The majority finds Article III causation satisfied by language in the complaint and Settlement Agreement, notwithstanding the Claims Administrator’s controlling interpretation rendering this language void, eliminating all causation requirements for a broad swath of the class and allowing individuals or entities to participate in the settlement even though they lack a justiciable claim. “Rule 23’s requirements must be interpreted in keeping with Article III.... ” Amchem Products, Inc., v. Windsor, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Standing is an essen *822 tial component of Article Ill’s case-or-controversy requirement, and it mandates that “there must be a causal connection between the injury and the conduct complained of.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). That is, whether a class member was economically injured is immaterial if that loss was not caused by the oil spill. Absent an actual causation requirement for all class members, Rule 23 is not being used to simply aggregate similar cases and controversies, but rather to impermissibly extend the judicial power of the United States into administering a private handout program. Because Article III does not permit this, I respectfully dissent.
I
While the three elements of Article III standing — injury, causation, and redressability — remain constant throughout the litigation, the standard of proof necessary to demonstrate these elements becomes progressively more demanding through “the successive stages of the litigation.” Lujan, 504 U.S. at 560, 112 S.Ct. 2130; ante, at 799. I agree with the majority we must evaluate standing according to the standard of proof for the Rule 23 class certification and settlement approval stage. I disagree with the majority, however, that Article III standing is satisfied in this case under the Denney test. I also disagree that Kohen, which by its facts addresses only pre-trial certification of a litigation class, applies to the certification of a settlement class.
A
In Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir.2006), a class action settlement case like ours, the Second Circuit determined that “[n]o class may be certified that contains members lacking Article III standing. The class must therefore be defined in such a way that anyone within it would have standing.” Id. (internal citations omitted) (emphasis added). The Denney test fundamentally recognizes that a class certification decision opens the doors of federal court to all members of that class. The federal courts are only open to justiciable cases.[1] Thus, Denney correctly appreciates that, at the end of litigation, settlement class certification stage, courts should verify that the class definition is limited to those with justiciable cases, that is, to those that would have standing. As the majority notes, the touchstone of this test is whether the class definition encompasses only persons and entities that possess Article III Standing. Ante at 803.
The majority holds that the extant settlement class is necessarily limited to those class members with claims causally connected to the oil spill, that is, to those with standing. Id. It bases this holding exclusively upon Section 1.3.1.2 of the Class Definition, which is contained in both the Amended Complaint and the Settlement Agreement. It totally, and erroneously, ignores language in other documents, including Exhibit 4B and the Claims Administrator’s Policy Announcement, which materially affects the status of the causation requirement. Section 1.3.1.2 summarizes an economic damage category for “[l]oss of income, earnings or profits suffered by Natural Persons or Entities as a result of the DEEPWATER HORIZON INCIDENT.” (emphasis added). Certainly, this language encompasses a causation require *823 ment.[2] However, the inquiry does not end there. Other documents with significant bearing on the Class Definition’s treatment of causation must also be examined.
Section 1.3.1 of the Class Definition incorporates by reference Exhibit 4B: “Causation Requirements for Business Economic Loss Claims.” Section 1 of Exhibit 4B establishes that certain individuals and entities, based on their location or the nature of their enterprise, “are not required to provide any evidence of causation.”[3] These groups are entitled to a presumption of causation.[4] Construed together, Section 1.3.1.2 of the Class Definition and Section 1 of Exhibit 4B establish that individuals and entities alleging a loss caused by the oil spill need not submit evidence of that causation when making a claim for payment.[5] Such a construction seemingly preserves a threshold causation requirement while simply eliminating the need for specific evidence to prove it when making a settlement claim. In other words, causation ostensibly remains an element of a claim even though proof is not a central feature of the claims process. Significantly, Section 1.3.1.2 and Section I of Exhibit 4B does not end our inquiry: The Claims Administrator has issued a controlling interpretation of the Class Definition’s causation requirements.
The Claims Administrator is specifically charged with implementing and administering the Settlement in Section 4.3.1 of the Settlement Agreement. Pursuant to this charge he issued an interpretive decision about causation for economic losses, in which he explained that he would:
“compensate eligible Business Economic Loss and Individual Economic Loss claimants for all losses payable under the terms of the Economic Loss frameworks in the Settlement Agreement, without regard to whether such losses resulted or may have resulted from a cause other than the Deepwater Horizon oil spill provided such claimants have satisfied the specific causation requirements set out in the Settlement Agreement.” (emphasis added).
The Claims Administrator further determined that “the Settlement Agreement does not contemplate that the Claims Administrator will undertake additional analysis of causation issues beyond those criteria that are specifically set out in the Settlement Agreement.” In short, the Claims Administrator established that the Settlement Agreement requires no proof of causation, beyond the specific requirements of Exhibit 4B. And, the district *824 court has repeatedly affirmed this determination.[6] Essentially, this interpretation renders Section 1.3.1.2’s causation language nugatory — all that matters is Exhibit 4B. There is no longer a threshold requirement that the economic losses stand “as a result of’ the Deepwater Horizon incident, and at least five groups[7] of Business Economic Loss claimants will never be required to provide any proof of causation. That is, there is no causation requirement in the Settlement Agreement — as actually implemented — for a significant segment of the class. Surely, the words “as a result of’ remain in the text of the Class Definition, the Amended Complaint, and the Settlement Agreement, but, in truth, they have no significance to determining who is eligible to participate in the settlement.
Consequently, this class can encompass individuals or entities who could never truthfully allege or establish standing, at any stage of the litigation. Thus, it fails under Denney. As explained in Lujan, Article III standing irreducibly requires that the injury be “fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.” 504 U.S. at 660, 112 S.Ct. 2188 (internal quotations and alterations omitted). The elimination of a causation requirement for these Business Economic Loss claimants renders the Settlement Agreement unconstitutional in this respect.
At the settlement class certification stage, Denney does “not require that each member of a class submit evidence of personal standing.” Denney 443 F.3d at 263. The test is whether each member contemplated by the definition can allege standing. Ante at 805-06. And for the purposes of standing allegations, we “assume arguendo the merits of [the] legal claim.” Cole v. General Motors Corp., 484 F.3d 717, 723 (5th Cir.2007). But here, at the settlement class certification stage, these standards are not met. Because the interpretation has nullified the causation language of Section 1.3.1.2 of the complaint, there is no guarantee that each member of the class meets the standing requirements of Article III. Thus, it is quite possible that claimants eligible for Exhibit 4B’s presumption of causation can fully participate in the settlement even though their injuries, if any, are not fairly traceable to the Deepwater Horizon incident. Cf. Lujan, 504 U.S. at 560, 112 S.Ct. 2130. Denney requires that the class must “be defined in such a way that anyone within it would have standing.” Denney, 443 F.3d at 264 (emphasis added). Absent a causation requirement for certain segments of Business Economic Loss claimants, this Class Definition includes those who would not.[8]
*825 The majority avoids the fatal impact of the Policy Announcement by concluding that “the evidentiary standard to be applied by the Claims Administrator [ ] is not a matter of Article III standing,” but rather “a question of interpreting the Settlement Agreement and applying it to each individual claim.... ” Ante at 808. If this case involved only a question of degree— say, what evidence is sufficient to establish causation — I might agree with this conclusion. In that case, some form of causation would remain intact. However, the issue here is not what evidence is sufficient, but rather whether causation has been entirely written out of the settlement. Certainly, this is within the bounds of an Article III inquiry. See Lujan, 504 U.S. at 560, 112 S.Ct. 2180 (holding that a causal connection is in irreducible component of Article III standing).
Furthermore, the majority strongly suggests that the Claims Administrator’s interpretation is not before us in this appeal. Ante at 807. While the policy interpretation is not literally part of the district court’s December 21, 2012 certification order, the document directly before us, it is clearly an integral aspect of how the Class Definition and the Settlement Agreement operate. The Denney test for verifying Article III standing at the class settlement stage of litigation requires the reviewing court to analyze the class definition. It is not possible to perform a true and accurate analysis while ignoring the controlling interpretation of this definition.[9]
The Claims Administrator’s interpretation must be treated as part and parcel of the Settlement Agreement and Class Definition for several reasons. First, the very district court that certified the class and oversees the settlement’s implementation has repeatedly affirmed this interpretation.[10] Second, the interpretation issued before the district court entered the final certification order and the record demonstrates the district court was aware of this.[11] Third, the Settlement Agreement provides that the Claims Administrator will have authority to make policy decisions and to issue guidance. It is illogical to disregard a pronouncement on the meaning of the Settlement issuing from the very entity the Settlement established for this purpose.
Lastly, Article III cannot be so easily duped by sleight of hand. Here, the district court certified a class based on the written Class Definition in the Amended Complaint and Settlement Agreement. This definition initially included “as a result of’ — a clear causation requirement. *826 Because of the Claims Administrator’s interpretation, it no longer does. The district court certified a class settlement agreement that, in pertinent part, no longer exists. And now, on appeal, the majority limits its standing analysis to the defunct text of Section 1.3.1.2. In essence, this analysis finds Article III satisfied by what has been transformed into an empty pleading allegation. But Article III demands more. A key function of the standing requirement is to “identify those disputes which are appropriately resolved through the judicial process.” Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Claims for damages that are not “fairly traceable to the defendant’s conduct,” Lujan, 504 U.S. at 560, 112 S.Ct. 2130, are not such disputes. Today’s opinion improperly welcomes them into federal court.
B
The majority further determines that this settlement class certification satisfies Article III standing under the Kohen test, which requires that the named plaintiffs— as opposed to absent class members — can satisfy Article Ill’s standing requirements. Kohen, 571 F.3d at 676; ante at 802-03. While I agree that the named plaintiffs’ standing is uncontested in this case, Kohen does not apply. As also observed by Judge Clement in Deepwater Horizon I, 732 F.3d at 344 n. 12, Kohen does not concern an end of litigation settlement class certification. This distinguishing factor is crucial.
In Kohen, the court determined that the “possibility or indeed inevitability” that the defined class will “often include persons who have not been injured by the defendant’s conduct” does not preclude class certification. Thus, the court looked only to the named plaintiffs to satisfy Article III standing. However, Kohen concerns a pre-trial litigation class certification, not a final settlement class certification, and in this presupposes that there will be a further stage where the Article III standing requirements will be proven up. Kohen, 571 F.3d at 677 (“If the case goes to trial, this plaintiff may fail to prove injury.”). The Kohen opinion relies on the fact that jurisdiction alleged at the pleading stage of a class action litigation must eventually be substantiated. Id. But, in a settlement class certification, like that at bar, there will be no additional stages for substantiating standing. The settlement ends the litigation. Accordingly, the Kohen “named plaintiffs only” formula for evaluating Article III standing is inapplicable here.
Additionally, the Kohen court actually embraces Denney’s focus on the class definition for verifying Article III standing. Kohen specifically rejected defendant-appellant’ PIMCO’s argument that the district court needed to verify each class members’ individual standing before certifying the class — that is, absent class members needed to prove standing before certification. Id. at 676. According to the Kohen court, the burden of proving standing at the pre-trial class certification stage lies with the named plaintiffs alone. But Kohen simultaneously recognizes that a “class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant____” Id. at 677. (emphasis added). The court specifically noted that “if the class definition clearly were overbroad, this would be a compelling reason to require that it be narrowed.” Id. at 678. So, without concern for proof of standing, Kohen recognizes that, even at the pretrial class certification stage, a certification does not comply with Article III if it embraces a swath of claimants who cannot claim injury-in-fact, causation, or redressability. Here, in light of the controlling interpretation, the class definition does exactly that for certain groups of *827 Business Economic Loss claimants. See supra Part II.A.
C
In conclusion, this interpretation creates an overbroad class definition, which “includes people who have no legal claim whatsoever.” Sullivan v. DB Investments, Inc., 667 F.3d 273, 340 (3d Cir.2011) (Jordan, J. dissenting). Under its terms, a segment of claimants could enter federal court and receive redress for injuries that need not have been caused by the defendant’s conduct. Without a causation requirement for class membership, this Settlement Agreement encompasses individuals and entities that do not possess the requisite justiciable case or controversy. From an administrative perspective the elimination of causation may be more efficient, but it is also violates Article III, which does not permit the federal courts to administer private handout programs. Accordingly, the district court’s Rule 23 certification is not in keeping with Article III constraints. See Amchem, 521 U.S. at 613, 117 S.Ct. 2231.
II
In addition to straying beyond Article III jurisdictional constraints, the Claims Administrator’s interpretation, by eliminating the causation requirement, violates at least two aspects of Rule 23, and runs afoul of the Rules Enabling Act, 28 U.S.C. § 2702(b).
A
Rule 23(a)(2) requires, as a necessary prerequisite to class certification, that “there are questions of law or fact common to the class.” In Wal-Mart Stores, Inc. v. Dukes, — U.S.-, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011), the Supreme Court interpreted this provision to require that the members of the class have “suffered the same injury.” This requires that the class members’ claims “depend upon a common contention,” the “truth or falsity [of which] will resolve an issue that is central to the validity of each one of the claims in one stroke.” Id. (emphasis added). The majority asserts that the commonality requirement is satisfied by myriad questions of law and fact about BP’s injurious conduct. See ante, at 810-12 (listing common questions). Certainly, these contentions are central to many class member’s claims. But Rule 23(a)(2) and Wal-Mart require more — the common contentions must go to the validity of each one of the claims. Because this class includes a segment of claimants whose injuries need not have been caused by the oil spill, this cannot be so. For example, “[w]hether BP used an improper well design that unreasonably heightened the risk [of an incident]” says nothing about the validity of a claim for economic injuries caused by factors other than the oil spill. As long as the class impermissibly aggregates those whose injuries were purportedly caused by the oil spill with those without any arguable claim of such causation, questions concerning BP’s liability are insufficient to satisfy Rule 23(a) commonality.
The same argument applies with full force to the Rule 23(a)(3) requirement that “the claims or defenses of the representative parties are typical of the claims or defenses of the class.” Cf. ante, at 811-12 n. 92. The Supreme Court has observed that the “commonality and typicality requirements of Rule 23(a) tend to merge.” Wal-Mart, 131 S.Ct. at 2550-51 n. 5. The majority holds that typicality is satisfied because “the class representatives — like all class members — allege economic and/or property damage stemming directly from the Deep water Horizon spill.” Ante, at 811-12 n. 92. (quoting In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010, 910 F.Supp.2d 891, 915 (E.D.La.2012)). This disregards *828 the unavoidable fact that causation, initially alleged in Section 1.3.1.2, has been effectively written out by the Claims Administrator. Given the Claims Administrator’s controlling interpretation, all class members do not allege injury “stemming directly” from the oil spill. Cf. id.
Rule 23 certification requires that the proposed class meets all the prerequisite requirements of Rule 23(a). See W. Ru-benstein, A. Conte & H. Newberg, Newberg on Class Actions § 3:1 (5th ed.2011). Commonality and typicality are absent here.
B
The Rules Enabling Act requires that that the rules of procedure “shall not abridge, enlarge or modify any substantive right.” 28 U.S.C. § 2702(b). The class action rules must be applied in keeping with this mandate. See Amchem, 521 U.S. at 613, 117 S.Ct. 2231. It follows that Rule 23’s aggregation function cannot be used to “create new rights and then settle claims brought under them.” Deepwater Horizon I, 732 F.3d at 342; see Sullivan, 667 F.3d at 343 (Jordan, J. dissenting) (“Rule 23 [serves] to efficiently handle claims recognized by law, not to create new claims.”).
This Settlement Agreement resolves claims arising under General Maritime Law (tort principles of federal common law) and the Oil Pollution Act, 33 U.S.C. § 2702(a). Each of these claims contains some sort of causation element. In order to prevail in a negligence action, a plaintiff must establish that the defendant’s breach of duty is the but-for and proximate cause of the injury complained of.[12] Under the Oil Pollution Act, a plaintiff must demonstrate that the costs and damages sought “result from” an oil spill incident. Thus, under the controlling substantive law, there is no right to recover damages for injuries not caused by the defendant’s breach. This settlement, however, allows individuals and entities whose injuries were not caused by the oil spill to claim and receive damage payments. See supra, Part II.A. That is, the set of eligible claimants is not congruent with the set of actual (those injured by the spill) claimants, the latter being merely a subset of the former. Thus, the settlement eliminates an essential component of the underlying cause of action, creating a legal right for some class members where none exists at law. This violates the Rules Enabling Act — by bringing claimants without causally related injuries into the class, Rule 23’s aggregation function has been improperly used to expand substantive rights.[13]
Ill
What makes this case unique, perhaps, is that causation is contemplated on the face of the core documents — the Amended Complaint, Class Definition, and the Settlement Agreement — but eliminated in application by the Claims Administrator’s interpretation. In evaluating whether Article Ill’s causation requirement for standing has been properly demonstrated at the settlement class certification stage, I would look to the class definition as it has been authoritatively interpreted, not simply as it is ostensibly written. Today, the majority takes another path, turning a blind eye to the Claims Administrator’s interpretation.
*829 The concerns identified in this dissent each stem from a common problem: causation has been eliminated for a broad swath of Business Economic Loss claimants. For the foregoing reasons, this requires that the class be decertified. However, this does not necessarily mean that a Settlement Agreement, writ large, is entirely unworkable or that Rule 23 is inapplicable. I simply observe that this attempted global settlement fails in a narrow, but significant, regard. I would vacate the class certification and Settlement Agreement, and remand to allow the parties and the district court to design a solution that complies with Article III, Rule 23, and the Rules Enabling Act.
Respectfully, I dissent.

. See, e.g., Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("[Standing] is founded in concern about the proper — and properly limited — role of the courts in a democratic society. [It] is the threshold question in every federal case, determining the power of the court to entertain the suit.”).

. Under the Oil Pollution Act, 33 U.S.C. § 2702(a), liability extends to removal costs and specified damages categories “that result" from an oil discharge incident.

. For example, Section 1.1 states, “If you are a business in Zone A, you are not required to provide any evidence of causation unless you fall into one of the exceptions agreed to by the parties, and listed in footnote (1).” Section 1.5 states, “If you are in Zone A, B, or C, and you meet the "Charter Fishing Definition” you are not required to provide any evidence of causation.” See infra Part II (explaining why geographic and enterprise-based requirements alone do not comply with the cause-in-fact requirement of Article III and the substantive law governing the class claims).

. These groups are in contrast to other groups of claimants that must provide evidence of causation according to the requirements of one of several revenue loss models defined in the Settlement Agreement — e.g., the "Modified V-Shaped Revenue Pattern,” or "Proof of Spill-Related Cancellations.”

. Exhibit 4B’s presumption of causation substitutes a claimant's geographical location, or the nature of a claimant’s enterprise, for proof of causation. There is an open question as to whether this substitution, even in conjunction with Section 1.3.1.2, would satisfy Article Ill's cause-in-fact element. However, on the facts before us, the Claims Administrator's interpretation has effectively eliminated Section 1.3.1.2's "as a result of” language.

.The Claims Administrator issued the Policy Announcement on October 10, 2012, just over two months before the District Court entered the final class certification order. On December 12, 2012, the district court acknowledged awareness of the interpretation in an email to the parties. And, on April 9, 2013, the district court issued an order adopting the interpretation. On December 24, 2013, responding to the remand in No. 13-30315 (Before Judges Dennis, Clement, and Southwick), the district court issued an order finding "that whether a business economic loss is "as a result of” the Deepwater Horizon incident for purposes of the Settlement is determined exclusively and conclusively by Exhibit 4B.” See Order and Reasons [Responding to Remand of Business Economic Loss issues], 2:10-MD2179, ECF No. 12055, at 18.

. See Exhibit 4B, §§ 1.1-5.

. On appeal, BP has presented particular evidence that the Administrator has made awards to persons and entities that "likely were not injured” by the oil spill. Ante, at 805. The majority holds that this evidence cannot be considered on appeal because it was not presented to the district court. Id. Taking this as true, there is no need to evalu *825 ate specific evidence to determine that the class definition, as currently interpreted, can include individuals or entities that cannot trace their injury to the oil spill. Looking at the totality of the relevant documents, it is clear that the Class Definition is overbroad. Exhibit 4B creates a presumption of causation for those that work in a specific area or occupation, and the "as a result of” language, stripped of meaning by the Claims Administrator, no longer bounds these individuals or entities. Thus, the class definition directly includes business claimants for which there is no causation requirement. Geographic and enterprise-based factors alone, all that are required under Section I of Exhibit 4B, are insufficient to satisfy the causal connection required by Article III. See infra Part II.

. The majority further suggests that the Claims Administrator's interpretation of causation in the class definition has been waived on appeal because "no party ever formally objected” to it, and because BP initially took "no position on the relevance vel non " of the policy interpretation. Ante at 797. Be this as it may, "we are certainly free ourselves to raise an issue of standing as going to Article III jurisdiction....” Lewis v. Casey, 518 U.S. 343, 394, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (quoting Mount Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 278, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

. See supra note 797.

. Id.

. The Amended Class Action complaint asserts claims for negligence, gross negligence and willful misconduct, and breach of contract under general maritime law. The breach of contract claims pertain only to Vessels of Opportunity ("VoO”) claimants.

. See Deepwater Horizon I, 732 F.3d at 339-44 (offering additional insights into the impact of the causation policy on Article III, Rule 23 and the Rules Enabling Act).